# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | | |
|---|---|---|
| Teresa Pope, | ) | Civil Action No. 1:16-cv-01627-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Barnwell County School District No. 19; | ) | |
| Carroll Priester; Ethel T. Faust; Karen | ) | **ORDER AND OPINION** |
| Jowers; Sharon McClary; Yvonne Birt; | ) | |
| David Corder; Rebecca Grubbs; and Shawn | ) | |
| Johnson, in their individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Teresa Pope ("Plaintiff") filed the instant action against Defendants Barnwell County School District No. 19 ("BCSD" or the "District"), Carroll Priester ("Priester"), Ethel T. Faust ("Faust"), Karen Jowers ("Jowers"), Sharon McClary ("McClary"), Yvonne Birt ("Birt"), David Corder ("Corder"), Rebecca Grubbs ("Grubbs"), and Shawn Johnson ("Johnson") (collectively "Defendants") seeking damages under 42 U.S.C. § 1983 for alleged violations of her "liberty interests guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution." (ECF No. 1 at 1 ¶ 1 & 23 ¶ 128–26 ¶ 144.) Plaintiff also asserts state law claims for breach of contract, breach of contract accompanied by a fraudulent act, interference with a contractual relationship, civil conspiracy, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress. (ECF No. 1 at 13 ¶ 70–23 ¶ 127.)

This matter is before the court by way of Defendants' Motion for Judgment on the Pleadings ("MJOP") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 20.) Plaintiff opposes Defendants' Motion. (ECF No. 28.) For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the

Pleadings.

## I.    RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff alleges that she began working for the BCSD as superintendent on a three-year contract (the "Contract") during the 2006–2007 school year.[1]  (ECF No. 1 at 4 ¶ 21.)  The express term of the Contract was from July 1, 2006, to June 30, 2009.  (ECF No. 20-2 at 2 § 1.)  During the initial contractual term, the BCSD extended the ending date of Plaintiff's employment by one year to June 30, 2010.  (ECF No. 20-2 at 10.)  Subsequently, the BCSD made several more amendments to the Contract ultimately pushing the ending date out to June 30, 2016.  (Id. at 12, 14, 17 & 19.)

Starting in April 2013, Plaintiff alleges that Priester, the current chair of the BCSD's board of trustees, "began a campaign to denigrate Plaintiff's character and career in order to remove Plaintiff from her position as superintendent."  (ECF No. 1 at 2 ¶ 5 & 5 ¶ 25.)  Specifically, Plaintiff alleges that Priester "filed an ethics complaint against Plaintiff with the South Carolina State Ethics Commission" alleging fraudulent hiring practices and misuse of government funds and also published an editorial "asserting that the District's leadership should be questioned for alleged misconduct."  (Id. at ¶¶ 26–28.)  Plaintiff further alleges that Priester at public board meetings questioned the expenses of the BCSD, the financial director's failure to attend every board meeting, and the amounts Plaintiff spent on traveling.  (Id. at 6 ¶¶ 31, 35 (referencing ECF Nos. 1-2 & 1-3).)  Following Priester's lead, other members of the BCSD's board of trustees also became outspoken concerning Plaintiff's job performance.  (Id. at ¶ 34.)

---

[1] The court observes that Plaintiff did not attach a copy of the Contract or its amendments as an exhibit to her Complaint.  Defendants attached these documents (ECF No. 20-2) as an exhibit to their Motion for Judgment on the Pleadings.  Because a MJOP uses the same standard as a Rule 12(b)(6) motion, the court may "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion [], so long as they are integral to the complaint and authentic."  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted).

On November 10, 2015, Plaintiff alleges that the BCSD advised her that it would not renew the Contract. (Id. at 9 ¶ 43.) From this point forward, Plaintiff alleges that Priester with the help of other Individual Defendants[2] undermined Plaintiff's ability to manage the BCSD as superintendent through the end of the Contract. (Id. at 9 ¶ 48–13 ¶68.) Thereafter, on April 26, 2016, Plaintiff alleges that the BCSD placed her on paid administrative leave through the end of the Contract. (Id. at 13 ¶ 69.)

On May 20, 2016, Plaintiff filed a Complaint in this court alleging claims for breach of contract ("Count 1" against the BCSD), breach of contract accompanied by a fraudulent act ("Count 2" against the BCSD), interference with a contractual relationship ("Count 3" as to Individual Defendants), civil conspiracy ("Count 4" as to Individual Defendants), defamation ("Count 5" against Defendants), negligent infliction of emotional distress ("Count 6" as to Defendants), intentional infliction of emotional distress ("Count 7" against Individual Defendants), deprivation of liberty interest, violation of civil rights and procedural due process ("Count 8" against the BCSD), and deprivation of a property interest without due process ("Count 9" against the BCSD). (ECF No. 1 at 13 ¶ 70–26 ¶ 144.) After answering the Complaint (ECF Nos. 14, 19), Defendants filed the instant MJOP on August 9, 2016, primarily asserting that Plaintiff's claims are barred by Eleventh Amendment sovereign immunity. (ECF No. 20.) Thereafter, on September 6, 2016, Plaintiff filed her opposition to the MJOP (ECF No. 28) to which Defendants filed a Reply on September 16, 2016. (ECF No. 30.)

## II.    JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims against the BCSD under 42 U.S.C. § 1983, which permits an injured party to

---

[2] "Individual Defendants" are Priester, Faust, Jowers, McClary, Birt, Corder, Grubbs, and Johnson.

bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." <u>Id.</u>  The court may properly hear Plaintiff's state law claims based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## III.     LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A MJOP is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." <u>Cont'l Cleaning Serv. v. UPS</u>, No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (citing <u>Herbert Abstract v. Touchstone Props., Inc.</u>, 914 F.2d 74, 76 (5th Cir. 1990)).  A MJOP "is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."[3] <u>Deutsche Bank Nat'l Trust Co.</u>

---

[3] A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); <u>see also</u> <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 251 (4th Cir. 1999); <u>Mylan Labs.</u>, 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

v. IRS, 361 F. App'x 527, 529 (4th Cir. 2010) (citing Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009)); see also Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

## IV.    ANALYSIS

A.    Sovereign Immunity

*1. The Parties' Arguments*

In their MJOP, Defendants first argue that "Plaintiff's claims are barred by sovereign immunity under the Eleventh Amendment." (ECF No. 20-1 at 6.)  In support of this argument, Defendants assert that "[b]ecause the District is an arm of the State of South Carolina, it is immune from private suit."  (Id. at 7 (citing, e.g., Eldeco, Inc. v. Skanska USA Building, Inc., 447 F. Supp. 2d 521, 527 (D.S.C. 2006); Smith v. Sch. Dist. of Greenville Cty., 324 F. Supp. 2d 786, 796 (D.S.C. 2004) ("[T]he Court is of the firm opinion that the relationship between the Defendant school districts and the state is so close and the laws of this state are such as to render the Defendant school districts as arms of the state for purposes of Eleventh Amendment sovereign immunity.")).)  Defendants further assert that this immunity extends to Plaintiff's claims against Individual Defendants because (1) a suit against them "in their official capacities is in reality a suit against the entity of which they are officials or employees," i.e., the BCSD; and (2) a suit against Individual Defendants in their individual capacities fails because their actions "were tied inextricably to their official duties."  (Id. at 8 (citing, e.g., Kentucky v. Graham, 473 U.S. 159, 166 (1985); Lizzi v. Alexander, 255 F.3d 128, 136–138 (4th Cir. 2001)).)

---

for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is "that on a 12(c) motion, the court is to consider the answer as well as the complaint."  Fitchett v. Cnty. of Horry, S.C., C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (quoting Cont'l Cleaning Serv., 1999 WL 1939249, at *1); see also A.S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964).

In response to Defendants' Eleventh Amendment sovereign immunity assertions, Plaintiff (1) confuses it with qualified immunity[4] (ECF No. 28 at 5) and (2) "concedes that her claims against [I]ndividual [D]efendants, in their official capacity are claims against the District and are barred by the Eleventh Amendment." (Id. at 6.)  Notwithstanding the foregoing, Plaintiff also argues that Individual Defendants are not entitled to Eleventh Amendment sovereign immunity in their individual capacities because they "did not always act in their official capacities." (Id.)

In Reply, Defendants argue that Plaintiff's representation regarding her individual capacity claims "is contradicted by Plaintiff's Complaint: '[a]t all times relevant to the allegations of this Complaint, [the District] acted by and through its agents and employees, [the Individual Defendants], who at all such times used their positions to act within the course and scope of their agency and employment.'" (ECF No. 30 at 3 (quoting ECF No. 1 at 3–4 ¶ 13).)

2. *The Court's Review*

The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.  Though not explicitly stated in the language of the amendment, courts have

---

[4] In response to Defendants' sovereign immunity assertions, Plaintiff stated that "immunity under the Eleventh Amendment only may be established either on the basis that the right violated was not at the time 'clearly established' or that, though 'clearly established,' it was one that a reasonable person in the official's position could have failed to appreciate would be violated by his conduct." (ECF No. 28 at 5 (citing Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)).) This is clearly the definition of qualified immunity. See, e.g., Wilson v. Layne, 526 U.S. 603, 609 (1999) ("A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'") (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).  State sovereign immunity is intended primarily to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties, while qualified immunity is a right to immunity from certain claims, not from litigation in general.  See Espinal-Dominguez v. Commonwealth of P.R., 352 F.3d 490, 499 (1st Cir. 2003).

long held that this guarantee also protects a state from federal suits brought by its own citizens, not only from suits by citizens of other states. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). Sovereign immunity under the Eleventh Amendment "is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued" in the first instance. Alabama v. North Carolina, 560 U.S. 330, 362 (2010) (quoting P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147, n.5 (1993)). Accordingly, once the defendant raises the jurisdictional issue of immunity, the court must resolve this threshold matter prior to addressing the merits of the plaintiff's claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998) (extensively discussing the importance of establishing proper jurisdiction before considering the merits of a claim).

The ultimate question for the purposes of the Eleventh Amendment immunity is whether the state is a real, substantial party in interest. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 101 (1984). Therefore, when an instrumentality or agent of the state, named as a defendant in a case, seeks to take advantage of the state's Eleventh Amendment immunity, it becomes necessary to examine the relationship between the state and the entity being sued to determine whether it should be considered an arm of the state. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has articulated a non-exclusive list of four (4) factors (the "Immunity Factors") to be considered when determining whether or not a state-created entity is an arm of the state, and thus protected from suit by the Eleventh Amendment. S.C. Dept. of Disabilities and Special Needs v. Hoover

Univ. Inc., 535 F.3d 300, 303 (4th Cir. 2008). The Immunity Factors are: (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with State concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State. Id. (internal citations and alterations omitted). See also U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 580 (4th Cir. 2012); Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005); Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n, 822 F.2d 456 (4th Cir. 1987).

In considering the merits of Defendants' MJOP on sovereign immunity grounds, the court notes that recent Fourth Circuit case law supports the proposition that a Rule 12 motion may not be the appropriate vehicle through which a defendant should assert Eleventh Amendment sovereign immunity. See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 147–48 (4th Cir. 2014) (Traxler, C.J., concurring in part and dissenting in part) ("Although this court has not addressed the issue, the circuits that have considered similar assertions of arm-of-state status have uniformly concluded that it is an affirmative defense to be raised and established by the entity claiming to be an arm of the state. See Sung Park v. Ind. Univ. Sch. of Dentistry, 692 F.3d 828, 830 (7th Cir. 2012) ("[S]overeign immunity is a waivable affirmative defense."); Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("Eleventh Amendment immunity is an affirmative defense . . . ." (internal

quotation marks omitted)); <u>Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.</u>, 466 F.3d 232, 237–39 (2d Cir. 2006) (treating Eleventh Amendment immunity "as akin to an affirmative defense"); . . . .  I believe these decisions were correctly decided and that the arm-of-state issue . . . is an affirmative defense . . . . "[a]n[d such]  affirmative defense may provide the basis for a Rule 12(b)(6) dismissal only in the relatively rare circumstances . . . where all facts necessary to the affirmative defense clearly appear <u>on the face of the complaint</u>.") (emphasis in original) (internal citation and quotation marks omitted).)  Notwithstanding the cases cited by Defendants, the court is convinced that <u>United States ex. rel. Oberg</u> offers better guidance as to how the court should adjudicate an Eleventh Amendment inquiry.  In this regard, the court finds that there is insufficient evidence in the record to establish the Immunity Factors requisite to grant Defendants' dismissal of the Complaint pursuant to sovereign immunity.  Based on this lack of evidence, the court is inclined to deny Defendants' MJOP on sovereign immunity grounds and allow the parties to engage in discovery on all relevant issues.

B.     <u>Applicability of the South Carolina Tort Claims Act</u>

       In addition to the sovereign immunity bar, Defendants argue that the South Carolina Tort Claims Act (the "Act"), S.C. Code Ann. §§ 15-78-10 to -220 (2014), bars any tort claims alleged against Individual Defendants.  (ECF No. 20-1 at 9 (citing <u>Flateau v. Harrelson</u>, 584 S.E.2d 413, 418 (S.C. Ct. App. 2003)).)  "Accordingly, Plaintiff's claims for interference with contractual relationship, civil conspiracy, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress are subject to dismissal."  (<u>Id.</u> at 10.)

       Succinctly, Plaintiff opposes Defendants' argument stating that "[t]he Act is not a complete bar to suit and does not afford the Individual Defendants any protection in their individual capacities."  (ECF No. 28 at 19.)

The Act is the exclusive remedy for individuals suing a governmental entity, its employees, or its agents for the commission of any tort.  <u>See</u> S.C. Code Ann. § 15-78-70(a) (2016); <u>see also</u> <u>Flateau v. Harrelson</u>, 584 S.E.2d 413, 416 (S.C. Ct. App. 2003) (citing S.C. Code Ann. § 15-78-20(b) (partially waiving sovereign immunity and providing for "liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty").  The Act provides that a government employee who commits a tort while acting within the scope of his official duty is not personally liable unless the conduct was "not within the scope of his official duties or it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  S.C. Code Ann. § 15-78-70(b) (2016).  When asserting claims that fall within the provisions of the Act, a plaintiff must sue the governmental entity, not the individual employee.  <u>See</u> <u>Flauteu</u>, 584 S.E.2d at 417.

Upon review, the court observes that Plaintiff specifically alleges behavior outside the scope of employment in support of her civil conspiracy claim.  (<u>See</u> ECF No. 1 at 17 ¶ 93 & 18 ¶ 96.)  As to the remaining tort claims, the court observes that there are allegations of intent to harm and/or maliciousness apparent in the Complaint.  (<u>E.g.</u>, ECF No. 1 at 17 ¶ 88, 20 ¶ 110, 22 ¶ 118 & 23 ¶ 125.)  Accepting these allegations as true, the court finds that Plaintiff has sufficiently alleged actions by Individual Defendants such that the protections of the Act are inapplicable to Plaintiff's tort claims.

C.     <u>Sufficiency of Allegations to Support Plaintiff's Claims</u>

Defendants argue that even if Plaintiff's claims are not procedurally barred, they all fail because of her insufficient allegations.  (<u>See generally</u> ECF No. 20-1 at 10–34.)  The court will analyze the sufficiency of the Complaint's allegations as to each claim.

1. *Breach of Contract against the BCSD*

Defendants argue that Plaintiff's breach of contract claim against the BCSD fails because she cannot "establish a breach or damages resulting from any alleged breach." (ECF No. 20-1 at 10.) In support of this argument, Defendants assert that the breach alleged by Plaintiff (ECF No. 1 at 14 ¶ 75[5]) is insufficient because the Contract expressly allowed the BCSD to place Plaintiff on administrative leave. (Id. at 11 (referencing ECF No. 20-2 at 9 § 13).) Moreover, Defendants assert that damages are lacking because "Plaintiff does not dispute that the district provided her with 'full pay and benefits' through June 30, 2016, the entirety of her term as superintendent" pursuant to the Contract. (Id. (citing ECF No. 1-9).)

Plaintiff contends that her breach of contract claim should survive Defendants' MJOP because of the allegation that the Contract was breached when Defendants "failed to allow her to act as superintendent as provided for in the contract." (ECF No. 28 at 16 (citing ECF No. 1 at 13 ¶ 73[6] & 14 ¶ 75[7]).) In this regard, Plaintiff asserts that "she would not have found herself on

---

[5] "Defendant District breached Plaintiff's employment contract and its duty of care to Plaintiff in numerous ways, including but not limited to: a. Failing to deal in good faith with Plaintiff; b. Constructively removing Plaintiff from her Superintendent position; c. Failing to comply with District policies and procedures such as District policy CBC; d. Failing to provide Plaintiff with notice and a hearing prior to deliberating Plaintiff's termination or constructive termination; e. Allowing District representatives to publicly place Plaintiff in a false light; publicize false statements concerning her actions as superintendent, and continuously undermining her authority as superintendent; and f. Other conduct to be proven at trial." (ECF No. 1 at 14 ¶ 75.)

[6] "Plaintiff's employment contract includes, but is not limited to, the following terms: a. "The Superintendent shall have charge of the administration of the District under the direction of the Board;" b. "She shall be the chief executive officer of the Board; shall select, organize, and assign all personnel, as best serves the District, in compliance with Board policy; shall oversee the instructional program and business affairs of the District; shall from time to time suggest regulations, rules, and procedures deemed necessary for the well ordering of the District; and in general perform all duties incident to the office of Superintendent as prescribed by Board policy and such other duties as may be prescribed by the Board from time to time." (ECF No. 1 at 13 ¶ 73.)

[7] See supra n.5.

administrative leave or having her contract not renewed had the District not breached the agreement and allowed her to act as superintendent." (Id.)

"To recover for a breach of contract, the plaintiff must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach." Tomlinson v. Mixon, 626 S.E.2d 43, 49 (S.C. 2006). There is no dispute that the Contract was binding on the parties. (E.g., ECF No. 19 at 6 ¶ 21.) Moreover, Plaintiff has alleged the breach of specific provisions in the Contract. (See ECF No. 1 at 13 ¶ 73 (quoting ECF No. 20-2 at 3 § 2).) Therefore, to survive the MJOP, Plaintiff has to only show damages resulting from the breach.

On one hand, Plaintiff alleges that the BCSD's "breach of contract has caused Plaintiff to suffer substantial actual and consequential damages . . . lost back and future wages and benefits, costs, attorney fees, and post judgment interest." (ECF No. 1 at 14 ¶ 76–15 ¶ 77.) On the other hand, Defendants assert that Exhibit I to the Complaint (ECF No. 1-9) demonstrates that Plaintiff does not have any damages because the Exhibit states that she received full pay and benefits through the term of the Contract. In considering the merits of the parties' positions, the court is guided by the general principle that "[w]hen an employee, is wrongfully discharged under a contract for a definite term, the measure of damages generally is the wages for the unexpired portion of the term." Shivers v. John H. Harland Co., Inc., 423 S.E.2d 105, 107 (S.C. 1992) (citing Latimer v. York Cotton Mills, 44 S.E. 559 (S.C. 1903)). However, at the same time, the court also acknowledges that the law supports a plaintiff's entitlement "to recover the loss she actually suffered as a result of the breach of her employment agreement." McNaughton v. Charleston Sch. for Math & Science, Inc., 768 S.E.2d 389, 397 (S.C. 2015) (citing, e.g., Drews Co. v. Ledwith–Wolfe Assocs., Inc., 371 S.E.2d 532, 534 (S.C. 1988) (stating that the proper

measure of compensation for a breach of contract "is the loss actually suffered by the contractee as the result of the breach")). Therefore, accepting as true Plaintiff's allegations that she has damages greater than any wages that were due to her for the time that she was placed on administrative leave, the court is persuaded that Plaintiff has sufficiently alleged a claim against the BCSD for breach of contract. Accordingly, Defendants' MJOP is denied as to the claim for breach of contract.

2. *Breach of Contract Accompanied by a Fraudulent Act against the BCSD*

As to Plaintiff's claim for breach of contract accompanied by fraudulent act, Defendants argue that she cannot establish a breach and further is unable "to meet the heightened pleading standard required to pursue a claim of fraud." (ECF No. 20-1 at 13.) In this regard, Defendants assert that Plaintiff's generalized claim of fraud is insufficient under Rule 9(b) of the Federal Rules of Civil Procedure. (Id. (citing, e.g., Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (requiring "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.")).)

Plaintiff argues that she "has alleged facts sufficient to bring a claim for breach of contract accompanied by a fraudulent act." (ECF No. 28 at 17.) Plaintiff asserts that she has alleged "[t]here was fraudulent intent on behalf of the Defendant District to remove the Plaintiff from her position through secret meetings and secret communications, as well as many other acts." (Id. (citing ECF No. 1 at 15 ¶ 80).) She further asserts that "[t]he fraudulent act in this case can be shown through staff meetings telling employees to go around the Plaintiff for District communications, false allegations being made to the media about the Plaintiff's conduct, emails regarding the plan to remove Plaintiff from her position, as well as others." (Id. (citing ECF No.

1 at 15 ¶ 80).)

"In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002) (citing Harper v. Ethridge, 348 S.E.2d 374 (S.C. Ct. App. 1986)). Because the court has already found Plaintiff's allegations sufficient to demonstrate a breach of the Contract, Plaintiff needs only to establish the last two elements of a breach of contract accompanied by fraudulent act claim to survive the MJOP. In the Complaint, Plaintiff describes the BCSD's fraudulent intent in breaching the contract with the following allegations:

> The fraudulent intent relating to the breach of Plaintiff's employment contract [] evidenced by the following: a. District employees and Defendant Johnson holding secret meetings about District operations excluding Plaintiff; b. Defendant Priester having secret communications, via telephone and otherwise, concerning District operations and her plan to remove Plaintiff from her position; c. Defendant Priester emailing Board members and other employees about her plan to remove Plaintiff from the superintendent's office; d. Defendant Priester and other board members making false allegations in the news media about Plaintiff's job performance and participation in unethical conduct; e. Upon information and belief, Defendant Priester advising Defendant Johnson and District employees to act pursuant to the Board's direction; f. Upon information and belief Defendant Johnson holding staff meetings at every school advising District employees to contact [] [Defendant] Birt if they needed to communicate with him concerning the District; and g. Other conduct that will be proven at trial.

(ECF No. 1 at 15–16 ¶ 80.) The Complaint further alleges a fraudulent act accompanying the breach pursuant to an allegation that the BCSD took actions "accompanied by fraudulent acts contemporaneous with Defendant District's breach of Plaintiff's employment contract including, but not limited to, Defendant District flagrantly violating the terms and conditions of Plaintiff's employment, District policy, and state and federal law." (ECF No. 1 at 15 ¶ 79.)

Upon review, the court is not persuaded that Plaintiff has sufficiently alleged an

"independent fraudulent act which accompanied the breach." <u>Minter v. GOCT, Inc.</u>, 473 S.E.2d 67, 71 (S.C. Ct. App. 1996). To this point, even if the court combines the one fraudulent act allegation in the Complaint with the acts cited by Plaintiff in her brief, these instances do not meet the requisite characterization for a fraudulent act. <u>Harper v. Ethridge</u>, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986) ("The fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design.") (citation omitted). As a result, the court finds that Plaintiff fails to sufficiently allege a fraudulent act accompanied any alleged breach of the contract. Accordingly, the BCSD is entitled to dismissal of this claim.

   *3. Interference with a Contractual Relationship against Individual Defendants*

Defendants argue that Individual Defendants cannot be liable for interference with a contractual relationship because they are parties to the Contract through their agency/employment status with the BCSD. (ECF No. 20-1 at 14.) In addition, Defendants argue that there is no evidence of the intentional procurement of the Contract's breach since it was allowed to expire at the end of its term on June 30, 2016. (<u>Id.</u>)

Succinctly, Plaintiff states that Individual Defendants interfered with the Contract when "Priester and the other Individual Defendants' actions or omissions caused Plaintiff's contract to be breached by undermining Plaintiff's authority as superintendent." (ECF No. 28 at 18 (citing <u>Haddle v. Garrison</u>, 525 U.S. 121, 126 (1998) ("One who maliciously and without justifiable cause, induces an employer to discharge an employee, by means of false statements, threats or putting in fear, or perhaps by means of malevolent advice and persuasion, is liable in an action of tort to the employee for the damages thereby sustained. And it makes no difference whether the employment was for a fixed term not yet expired or is terminable at the will of the employer.")).)

"The elements of the tort of wrongful interference with an existing contractual

relationship are as follows: (1) A contract, (2) knowledge of the contract by the wrongdoer, (3) an intentional procurement of the contract's breach, (4) the absence of justification, and (5) damages resulting therefrom." Love v. Gamble, 448 S.E.2d 876, 882 (S.C. Ct. App. 1994) (citing, e.g., Todd v. S.C. Farm Bureau Mut. Ins. Co., 336 S.E.2d 472, 473 (S.C. 1985)). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." Threlkeld v. Christoph, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984). "[I]t does not protect a party to a contract from actions of the other party." Id.

In considering the merits of the MJOP as to this claim, the court observes that it is uncontested that Individual Defendants were agents of the BCSD. Moreover, unlike some of her other claims, Plaintiff did not disclaim the Complaint's early acknowledgement that Individual Defendants Priester, Faust, Jowers, McClary, Birt, Corder, Grubbs, and Johnson were "agents and employees" of the BCSD "[a]t all times relevant to the allegations of this Complaint." (ECF No. 1 at 3–4 ¶ 13.) Therefore, because it is undisputed that Individual Defendants were acting as the BCSD's agents at all times relevant to this claim, Plaintiff cannot set forth a plausible claim of interference with contractual relationship thereby warranting its dismissal. Threlkeld, 312 S.E.2d at 15 (finding proper grant of summary judgment as to an interference with employment contract claim on the basis that the individual defendants were agents of the corporate defendant).

### 4. Civil Conspiracy against Individual Defendants

Defendants argue that Plaintiff cannot maintain a civil conspiracy claim because (1) she was an at-will employee; (2) she failed "to plead with specificity acts taken by each of the Individual Defendants in furtherance of the alleged conspiracy"; and (3) she "failed to plead special damages." (ECF No. 20-1 at 15–16 (citing, e.g., Angus v. Burroughs & Chapin Co., 596

S.E.2d 67, 70 (S.C. Ct. App. 2004) ("[A]n at-will employee cannot maintain an action against a former employer for civil conspiracy that resulted in the employee's termination."); Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009) ("A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint.")).)

Plaintiff contends that she has alleged a valid claim of civil conspiracy. Plaintiff asserts that the civil conspiracy claim "does not arise out of a termination" and the allegations in her Complaint and its supporting exhibits clearly depict the campaign engaged in by Individual Defendants to remove her from her position. (ECF No. 28 at 10–11.) As to special damages, Plaintiff asserts that her civil conspiracy "damages do go beyond the damages alleged in her other causes of action" since her civil conspiracy damages are based on "a deteriorating medical condition, which includes, but is not limited to depression, anxiety, excessive stress, high blood pressure, and other medical complications." (ECF No. 28 at 12 (citing ECF No. 1 at 19 ¶ 100).)

Under South Carolina law, a "[c]ivil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." Vaught v. Waites, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989). As long as sufficient facts are alleged to make out a prima facie civil conspiracy claim, the plaintiff does not have to explain all of the details of the conspiracy in his complaint. Charles v. Tex. Co., 5 S.E.2d 464, 472 (S.C. 1939). However, a civil conspiracy claim must be supported by facts independent of the other causes of action in the complaint; a plaintiff may not simply incorporate allegations that support other causes of action to sustain a cause of action for civil conspiracy. Cricket Cove Ventures, LLC v. Gilland, 701 S.E.2d 39, 46 (S.C. 2010) (citing Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 611 (S.C. 1981)). The plaintiff must also plead damages

suffered as a result of the conspiracy that go beyond damages alleged in other causes of action. Id. at 39 (citing Vaught, 387 S.E.2d at 95). Additionally, "a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities." McMillan v. Oconee Mem'l Hosp., Inc., 626 S.E.2d 884, 886-87 (S.C. 2006) (citation omitted). In this regard, "agents for a corporation acting in the scope of their duties cannot conspire with the corporation absent the guilty knowledge of a third party." Id. (citing Goble v. Am. Ry. Express Co., 115 S.E. 900, 903 (S.C. 1923)).

At the outset, the court observes that Defendants' argument regarding Plaintiff's at-will employment is not dispositive. Under South Carolina law, at-will status is altered when "a contract, policy, procedure, or representation [] limit[s] either the duration of the employment or the employer's right to terminate the employee." Weaver v. John Lucas Tree Expert Co., C.A. No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *6 (D.S.C. Oct. 10, 2013) (citations omitted). In this case, not only was the Contract for a definite term ending on June 30, 2016, but it contained provisions that effectively limited the BCSD's right to terminate by requiring cause (ECF No. 20-2 at 8 § 10(c)) or the affirmative vote of four members of the BCSD's board of trustees. (Id. at § 10(d).) As a result, the court finds that Defendants are not entitled to dismissal of Plaintiff's civil conspiracy claim on the basis of her alleged at-will employment.[8]

As to the specifics of her civil conspiracy claim, Plaintiff alleges that Individual "Defendants Priester, Birt, Johnson, and others met at various times and places to scheme, conspire and plan in secret – outside of the natural course and scope of their employment duties and roles – to have Plaintiff eliminated from the District as superintendent for a variety of

---

[8] The court observes that the court in Angus focused on the fact that Angus's "employment contract stated that she was 'employed at the will' of the Horry County Council." Angus, 596 S.E.2d at 69, 70. The Contract in this case did not contain such language.

reasons, which include but are not limited to dislike, ambition, and power." (ECF No. 1 at 17–18 ¶ 93.) Plaintiff alleges that Priester led Individual Defendants who covertly plotted Plaintiff's termination, hired her replacement while she was still acting superintendent and ridiculed Plaintiff's "supervisory ability to the public and others and encouraging someone to file untruthful grievances against her." (Id. at 18 ¶¶ 94–95 & 19 ¶ 98.) Plaintiff further alleges special damages (see id. at 19 ¶ 100 ("deteriorating medical condition . . . depression, anxiety, excessive stress, high blood pressure . . . .") that are not alleged in support of any other claims. Upon consideration of the foregoing, the court finds that Plaintiff's allegations sufficiently allege a claim for civil conspiracy against Individual Defendants to survive the MJOP.

### 5. *Defamation against Defendants*

Defendants contend that Plaintiff's defamation claim fails because she did not plead with specificity either designating any defendant by name or by making "any factual allegations to tie any specific individual defendant to any alleged defamatory statements." (ECF No. 20-1 at 18.) Defendants further contend Plaintiff's claim fails because as a public official, she was required to, but did not, plead facts establishing actual malice by the clear and convincing standard. (Id. at 20.)

Plaintiff defends her defamation claim asserting that it is supported by specific allegations in the Complaint along with supporting Exhibits A–C. (ECF No. 28 at 14 (referencing ECF Nos. 1-1, 1-2 & 1-3).) In addition, Plaintiff asserts that the defamation claim against BCSD is actionable per se because "the defamatory statements made against Plaintiff in e-mails and in the news concern her alleged unfitness in her job." (Id. at 15 (citing Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497 (S.C. 1998) ("[S]lander is actionable per se only if it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a

crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession.")).)

The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). To establish a claim for defamation, the plaintiff must show (1) a false and defamatory statement was made concerning the plaintiff; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[9] Fleming v. Rose, 567 S.E.2d 857, 860 (S.C. 2002). "Additionally, a plaintiff, who is a public official or public figure, must prove by clear and convincing evidence that the defendant acted with constitutional actual malice in publishing a false and defamatory statement about the plaintiff." MRR S., LLC v. Citizens for Marlboro Cty., C/A No. 4:09-03102-JMC, 2012 WL 1016180, at *2 (D.S.C. Mar. 26, 2012) (citing, e.g., Time, Inc. v. Firestone, 424 U.S. 448, 453–55 (1976)). "Constitutional actual malice exists when a statement is made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Id. (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)).

In the Complaint, Plaintiff generally alleges that the BCSD through the Individual

---

[9] The defamatory meaning of a message or statement may be obvious on the face of the statement, in which case the statement is defamatory per se. Holtzscheiter, 506 S.E.2d at 501. If the defamatory meaning is not clear unless the hearer knows facts or circumstances not contained in the statement itself, then the statement is defamatory per quod, and the plaintiff must introduce extrinsic facts to prove the defamatory meaning. Id. In addition to those classifications, a statement may be actionable per se, in which case the defendant is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages. Id. A statement may also not be actionable per se, in which case nothing is presumed and the plaintiff must plead and prove both common law malice and special damages. Holtzscheiter, 506 S.E.2d at 501–2.

Defendants defamed her by

> a. Publishing editorials in news publications; b. Making false and negative comments to reporters on news television stations; c. Filing unfounded ethics complaints against Plaintiff; d. Causing unfounded ethics allegations against Plaintiff to become public; e. Advising District employees that they work for the Board; f. Advising District employees that they need to follow the instructions of Dr. Johnson; g. Undermining Plaintiff's authority by engaging in the operations of schools and the District; and h. Other conduct to be proven at trial.

(ECF No. 1 at 19–20 ¶ 103.)  Plaintiff further alleges that "[s]uch publications, statements, acts, and republications are false and have been made in reckless disregard for the truth and with conscious knowledge of the falsity of the same."  (Id. at 20 ¶ 110.)

Upon consideration of these allegations as pleaded, the court finds that they are not sufficient to survive Defendants' MJOP.  Specifically, the Complaint's allegations do not "state with specificity the time, place, medium, and listener of the alleged defamatory statements." Doe v. Cannon, C/A No. C/A No 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017) (citing, e.g., Caudle v. Thomason, 942 F. Supp. 635, 638 (D.D.C. 1996) ("[I]n order to plead defamation, a plaintiff should allege specific defamatory comments [including] 'the time, place, content, speaker, and listener of the alleged defamatory matter.'")).  In addition, and as Defendants note, a claim of defamation carries a two year statute of limitations from the time an alleged defamatory statement is made.  (ECF No. 30 at 9 (citing S.C. Code Ann. § 15-3-550(1))), Therefore, any defamation claim based on Exhibits A–C to the Complaint (ECF Nos. 1-1, 1-2 & 1-3) is barred by the statute of limitations.  Accordingly, the court grants the MJOP as to Plaintiff's claim for defamation.

### 6.  Negligent Infliction of Emotional Distress Against Defendants

Defendants assert that the claim for negligent infliction of emotional distress ("NIED") is barred by the exclusivity provisions of the South Carolina Workers' Compensation Act.  (ECF No. 20-1 at 21.)

In response, Plaintiff agrees that her claim for NIED against the BCSD is barred by the exclusivity provisions of the South Carolina Workers' Compensation Act.  (ECF No. 28 at 18.) However, Plaintiff maintains that her NIED claim against Individual Defendants is viable because she can "demonstrate physical injury that manifested itself due to the actions of the Defendants." (Id.)

As a result of Plaintiff's concession, the court dismisses Plaintiff's claim against the BCSD for NIED.  Turning to Plaintiff's NIED claim against Individual Defendants, the court observes that she alleges that Individual Defendants engaged in outrageous conduct "some of which was carried out in connection with their job responsibilities." (ECF No. 1 at 22 ¶ 119.) "Under South Carolina Code Ann. section 42-5-10 (1985), a co-employee who negligently injures another employee while in the scope of employment is immune under the Workers' Compensation Act and cannot be held personally liable." Strickland v. Galloway, 560 S.E.2d 448, 449 (S.C. Ct. App. 2002).  Therefore, the court finds that any alleged conduct by Individual Defendants "carried out in connection with their job responsibilities" is barred by the South Carolina Workers' Compensation Act's exclusivity provisions.  As to any remaining conduct not in the scope of employment, the court concludes that Plaintiff's allegations do not state a claim for NIED.  See Stephens v. United States, C/A No. 0:16-cv-149-BHH, 2017 WL 217965, at *3 (D.S.C. Jan. 19, 2017) ("South Carolina law does permit recovery for negligent infliction of emotional distress, but only in the very limited context of situations involving bystander trauma, specifically: (a) the negligence of the defendant must cause death or serious physical injury to another; (b) the plaintiff bystander must be in close proximity to the accident; (c) the plaintiff and the victim must be closely related; (d) the plaintiff must contemporaneously perceive the accident; and (e) the emotional distress must both manifest itself by physical symptoms capable

of objective diagnosis and be established by expert testimony.") (citing <u>Kinard v. August Sash &</u> <u>Door Co.</u>, 336 S.E.2d 465, 467 (S.C. 1985)).  Therefore, Individual Defendants are also entitled to dismissal of Plaintiff's NIED claim.

   7.  *Intentional Infliction of Emotional Distress Against Individual Defendants*

   Defendants assert that the claim for intentional infliction of emotional distress ("IIED") against Individual Defendants is barred by the exclusivity provisions of the South Carolina Workers' Compensation Act.  (ECF No. 20-1 at 22.)  In addition, Defendants assert that the IIED claim fails because Plaintiff did not "plead facts to meet the heightened threshold required for an IIED claim."  (<u>Id.</u> at 23.)

   As to her IIED claim, Plaintiff asserts that the Motion should be denied because her medical evidence "shows the severe emotional distress and resulting physical injuries inflicted as a result of the Defendants' actions."  (ECF No. 28 at 13.)

   "To recover under an intentional infliction of emotional distress theory, a plaintiff must establish (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could expect to endure it.'"  <u>Bass v. S.C.</u> <u>Dep't of Soc. Servs.</u>, 742 S.E.2d 667, 672 (S.C. Ct. App. 2013) (citing <u>Argoe v. Three Rivers</u> <u>Behavioral Health, L.L.C.</u>, 710 S.E.2d 67, 74 (S.C. 2011)).  Moreover, there is a heightened burden found in the second and fourth elements that requires a plaintiff "in order to prevail in a tort action alleging damages for purely mental anguish [] [to] show both that the conduct on the part of the defendant was 'extreme and outrageous,' and that the conduct caused distress of an

'extreme or severe nature.'" Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 71 (S.C. 2007)

(citing Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).

Upon review, the court first observes that Plaintiff generally alleges intentional conduct

by Individual Defendants (see ECF No. 1 at 22 ¶ 124) thereby placing them outside the scope of

the South Carolina Workers' Compensation Act. Dickert v. Metro. Life Ins. Co., 428 S.E.2d

700, 702 (S.C. 1993) ("The Worker's Compensation Act may not be used as a shield for a co-

employee's intentional injurious conduct."). As to the allegations specifically, Plaintiff states

that she suffered severe emotional distress as a result of the following actions by Individual

Defendants: "a. Filing an unfounded ethics complaint against Plaintiff; b. Continuing to levy

false allegations against Plaintiff publicly after receiving knowledge that the allegations were

false; c. Engaging in activities to force Plaintiff from her position; d. Directing District

employees to not work with Plaintiff; e. Harassing Plaintiff with accusatory emails, statements,

and actions publicly and privately and; f. Other conduct to be proven at trial." (ECF No. 1 at 22–

23 ¶ 124.) Assuming the aforementioned allegations to be true, together with plausible

references in Plaintiff's favor, the court finds that Individual Defendants could be liable to

Plaintiff for conduct so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community. As a result, Individual Defendants are not entitled to dismissal of Plaintiff's claim

for intentional infliction of emotional distress.

8. *Deprivation of Liberty Interest, Violation of Civil Rights and Procedural Due Process against the BCSD*

Defendants assert that Plaintiff failed to allege a liberty interest against the BCSD

because the Complaint lacks allegations demonstrating alleged false statements, their speaker,

their publication, their relation to her termination, and how they stigmatized her reputation. (Id.

at 27.)  Specifically, Defendants assert that the only statement relevant to Plaintiff's liberty interest claim (referencing ECF No. 1-9) neither made "negative statements about Plaintiff" nor published the reason why the BCSD did not renew the Contract.  (ECF No. 20-1 at 28–29.) Moreover, Plaintiff is unable to show damage to her reputation because "she was able to immediately obtain new employment in the education field" after the expiration of the Contract. (Id. at 30.)

Plaintiff attempts to demonstrate "the validity of her liberty interest claim" by asserting that she "has pled facts and presented supporting exhibits demonstrating the Individual Defendants making false statements, publicly and privately, that stigmatized her reputation." (ECF No. 28 at 8.)  Moreover, she asserts that "[t]he actions of the Defendants have damaged Plaintiff's reputation to the extent that she cannot obtain new employment in the field of public education."  (Id.)  As a result, Plaintiff argues that she "should be afforded the opportunity to proceed on her claims as a result and because she has sufficiently pled facts to allege her claims against the Defendants."  (Id. at 8–9.)

"[I]n order to claim entitlement to the protections of the due process clause . . . a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'"  Johnson v. Morris, 903 F.2d 996 (4th Cir. 1990) (quoting Stone v. University of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988)).  "Injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest."  Fleming v. Rose, 526 S.E.2d 732, 741 (S.C. Ct. App. 2000) (citing Paul v. Davis, 424 U.S. 693 (1976)).  "Yet, injury to reputation does deprive a person of a liberty interest when the injury is combined with the impairment of 'some more tangible' government benefit."  Id. (citing Paul, 424 U.S. at 701).  "It is enough, for example, if the

plaintiff shows the reputational injury causes the 'loss of government employment.'" Id. (citing Paul, 424 U.S. at 706). "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007) (citing Stone, 855 F.2d at 172 n.5).

Upon review, the court finds that these elements are not all present in Plaintiff's Complaint. Specifically, the court observes that Plaintiff's allegations do not establish that any false statements were made in conjunction with her placement on administrative leave or the expiration of the Contract. As a result of the foregoing, the court is constrained to find that Plaintiff has not sufficiently alleged a Fourteenth Amendment liberty interest due process claim. Accordingly, the MJOP is granted as to this claim.

9. *Deprivation of a Property Interest without Due Process against the BCSD*

Defendants argue that Plaintiff cannot establish a property interest in the superintendent position because she fails to demonstrate a "legitimate claim of entitlement to [continued employment] arising from a state statute, local ordinance or employment contract." (ECF No. 20-1 at 32.) In support of the foregoing, Defendants claim that both state law and the Contract's language show that "Plaintiff had no legitimate claim of entitlement to continued employment as superintendent after the expiration of the Employment Agreement." (Id.)

Plaintiff concedes that "she did not have a property interest in her employment as superintendent despite the wrongful actions of the Defendants." (ECF No. 28 at 10.) As a result of Plaintiff's concession, the BCSD is entitled to dismissal of the claim alleging deprivation of a property interest without due process.

V.    CONCLUSION

Upon careful consideration of the pleadings (ECF Nos. 1, 14 & 19) and the arguments of the parties, the court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 20.) Accordingly, the court dismisses from this action Plaintiff's claims for breach of contract accompanied by fraudulent act ("Count 2"); interference with a contractual relationship ("Count 3"); defamation ("Count 5"); negligent infliction of emotional distress ("Count 6"); deprivation of liberty interest, violation of civil rights and procedural due process ("Count 8"); and deprivation of a property interest without due process ("Count 9").  As a result of the foregoing, the court has dismissed all claims for which it has original jurisdiction.  However, in its discretion, the court will retain jurisdiction over the remaining state law claims for breach of contract ("Count 1"), civil conspiracy ("Count 4") and intentional infliction of emotional distress ("Count 7").[10]

---

[10] The Fourth Circuit explained the court's discretion as follows:

> Once the district court dismissed the federal claims against Defendants, the court had the authority to retain jurisdiction over the state law claims that were closely related to the original claims.  28 U.S.C. § 1367(a).  However, the district court also had the discretion to decline to exercise supplemental jurisdiction over claims outside its original jurisdiction.  28 U.S.C. § 1367(c)(3).  We have recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).  In exercising that discretion, the district court should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  Semple v. City of Moundsville, 195 F.3d 708, 714 (4th Cir. 1999).  In addition, the dismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim.  Edwards v. Okaloosa County, 5 F.3d 1431, 1433–35 (11th Cir. 1993); Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1043 (5th Cir. 1982).

Katema v. Midwest Stamping, Inc., 180 F. App'x 427, 428 (4th Cir. 2006).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 28, 2017
Columbia, South Carolina